Good morning. I'm Stephanie Simpson, representing the Appellate Counsel. There were two phases really to this case. The claimant was paid disability benefits from 1980 to 1989. Then he was terminated from benefits. He then claimed that he was disabled from May 5, 1990. So the case was sent back for hearing. There were two decisions on this case. During the 1990s, 1990, 1992 and so forth, he was in the hospital for three times and for gastrointestinal bleeding, he had seizures and so forth. He had also injured his left ankle at that time. Now, at the hearing, the judge asked him if he did any work during that period to about 1994. He said yes. After each hospitalization, he had to rest for a couple of months because it was too much for him. But he did some work in between and was paid cash. Now, the ALJ did not go any further into that to determine how much money he had made or how often he worked and so forth. What he did say in his decision is that even if I found that he did not engage in substantial gainful activity, I would still find him disabled. Now, that to me would not appear to be a statement of an impartial adjudicator. He had the opportunity to ask him a few more questions and really get some facts as to whether or not he had engaged in substantial gainful activity during that period. There's testimony right out of the mouth of your client. Pardon? There is testimony right out of the mouth of your client and in some forms that he filled out would suggest that he was engaged in substantial employment. This is an odd case in that often we're faced with the question of whether we have a malingerer on our hands. Here we have a man who looked like, despite pain and despite disability and illness, he did work. He did work? Yes. He did work, but then what the judge should have tried to determine is how much money did he actually make, because if you made a certain amount of money at that time, you were considered engaging in substantial gainful activity. He didn't ask him that. He didn't ask him how many days did he work. This would have given him some sort of a foundation for the decision that he made, but he didn't do that. Is that up to the administrative law judge to ask, or is that something that your client's obligated to present? Pardon? Is that something that your client's obligated to present, or is that something the immigration judge or, excuse me, the administrative law judge has the obligation to ferret out? Whose burden is it to show how much money he made? Well, I think the man was under oath. The judge could have said to him, give me an estimate of how much money you made, and then if he said, well, I made $100 this time and $100 this time, if during that monthly period it came to about $300 or so, which at that time I think was the showing that you engaged in substantial gainful activity per month, that would have given him a foundation. He didn't do any of this. He just, I guess he came to the hearing with the idea that he was going to support the prior decision of the ALJ, who found him not disabled after 89. Well, anyway, in 1994, he went back to work. He fell off the roof because he was a roofer, and at that time he fractured his right ankle, which required reconstructive surgery. In He received worker's comp for about a year. Then after that, he attempted to work. He worked one week and three days, and he then was unable to work after that. And when he became 65, he was 56, I think, or 57 at that time. So when he became 65, he went into retirement benefits. Now, at that hearing, the judge, there was a five-step determination, disability determination. At the fourth step, the judge found he could not return to past work as a roofer. Then the ALJ is supposed to go to the fifth step, because the burden is then on the commissioner to determine what jobs, if any, the individual can do considering his restrictions. The ALJ did not do that. He used the grids. Now, the Permanente case, the Ninth Circuit case law states that if you have severe pain, that is a non, that is considered, well, a non-exertional. Yeah. And the man complained of the severe pain in the right ankle all the time. He would have it with a plate and screws and so forth. One thing that concerns me, though, is his medication for that pain was pretty mild. And furthermore, the doctors said he could go back to work. And it seems odd that a doctor with a patient complaining of severe pain would nevertheless say he could go back to work. Well, after the one year of work has come, he had no money, nothing at all. I know that the ---- What about the fact that the doctors indicated he could go back to work? Well, Dr. Lee at first said he could return to work. But then when he reexamined him, he said that he has the restrictions and so forth that he cannot return to work. Counsel, is there anything in the record that shows that Dr. Lee examined him or did he just write a letter? He said he testified he had no money. Yes, I understand that. But Dr. Lee wrote this letter for the last hearing, but I find nothing in the record that suggests that he actually examined him. Nothing in the record that he was disabled? Yeah. It's just that he had that continuous severe pain in the right ankle. And that would make it, therefore, the ALJ should have called on a vocational expert. And the vocational expert, if with the hypotheticals given to a vocational expert, they could have come up with some jobs that he could do with his limitations. The ALJ did not do that. He just went to the grids and use of the grids with the severe impairment or severe pain and so forth is just not allowed according to Ninth Circuit law. So you're saying he needed to at least specify which of those jobs in the big list that he could and couldn't do? He couldn't what? The judge needed to be more specific as to what jobs he could or couldn't do? No. This is what he should have done. He should have called on a V.E. And with the hypothetical, I've got a man, 56, 57 years old, who has pain, who can't stand all the time, who has seizures and so forth. Are there any jobs in the national economy that this individual could do? That is the usual policy. He didn't do that. It would appear that he had made up his mind that he was just going to find the individual not disabled. Did you want to save the remaining time for rebuttal? Yes. All right. Thank you. Good morning, Your Honors. Nancy Leshevsky for Commissioner Astru. Astru, is that how you? Astru, yes. They keep changing, so I've moved from Barnhart to Astru now. Thank you. Astru from now on for six years or so. In this case, the ALJ reasonably determined that the claimant was performing substantial gainful activity between 1990 and 1994. As Ms. Simpson noted, the claimant had been on disability until 1986 when he went back to work. He received a further three years of benefits based on a program then in existence. And the ALJ determined based on the claimant's own testimony that he was working. And in this case, I believe at page six of the district court's decision, they explain what the ALJ relied on, which was basically the claimant's own testimony and noted that even giving him a great benefit of the doubt, he was making approximately $200 a week, which was more than the $500 SGA requirements then in existence. Now, what on exactly what was this $200 estimate based? This was based on the reports that claimant submitted in which he said that he worked an average of five or six days a week at a rate of $5 to $6 an hour. Now, in this case, the medical evidence shows that the claimant, after his 1994 injury, that he fully recovered from his ankle fracture within a year. By he was injured on January 26th, 1994. By November 1st, 1994, Dr. Lee, his own treating physician, said that he could go back to work with no heavy lifting. And by January 24th, 1995, he was cleared to go back to work. And significantly, the ALJ again gave claimant the benefit of the doubt, saying that limiting him to medium work. And in this case, that finding was supported by consultative examiners Dr. Epstein and consultative examiners Dr. Gabriel, who both found, well, Dr. Epstein found that the claimant could stand and walk for eight hours a day, four to six hours without interruption. And Dr. Gabriel found that the claimant could stand and walk for six hours a day, at least four without interruption. And in fact, they also had no lifting limitations by limiting the claimant to medium. Again, the ALJ was giving him a great benefit of the doubt. Counsel, Dr. Lee wrote a letter finally saying that he was disabled and couldn't work. Was he examined at that time? Well, Your Honor, I'd like to say that Dr. Lee did write a letter. I'm not sure that it says that he was disabled. In fact, the district court looked at that letter and noted that even accepting those limitations, there's not necessarily a preclusion of medium work. And it also does not appear that Dr. Lee examined claimant after 1996. And Ms. Simpson is arguing that the claimant didn't have the money for medical treatment. And significantly in this case, that's why the commissioner sent him to two consultative examiners, so that there was medical evidence fresh at the time to review. Is there any obligation in terms of the grids and what's the available work to say something more than he's available for medium work and having to go further either with a hypothetical or specifying which jobs within that huge category he actually is able to do with limitation? Not in this case, Your Honor. In this case, I'll explain. And why not? In order to have a Step 5 finding that a claimant is available for other alternative work, a claimant, the ALJ can either rely on the medical vocational guidelines or a vocational expert. In this case, the guidelines are appropriate because the ALJ reasonably determined that there were no non-exertional limitations. For example, he limited the claimant from working around moving machinery based on a seizure preclusion. And in this case, the claimant admitted that he had seizures since 1970, and he also worked as a roofer during this time. I think one thing that might also, there is an issue, there could be an issue of transferability, which is one thing that was briefed by Ms. Simpson. But in this case, while the claimant was an individual of advanced age, he was also found capable of medical vocational guidelines fully address the situation, and there was no need for vocational expert testimony. If you have any further questions? It appears not. Thank you. We have about a minute for rebuttal. Yes. May I just state that during the period 1990 to about 1994, when he fell off the roof, the ALJ had no evidence upon which to find that he had engaged in substantial gainful activity. In addition, regarding the two consultants, Dr. Gabriel and Dr. Epstein, Dr. Epstein found restrictions concerning that right ankle. Claimants testified that Dr. Epstein did not examine him. And the Ninth Circuit law says that the ALJ is not a vocational expert and so forth. He should have called on a vocational expert when he himself found that at step four the claimant could not return to past relevant work as a roofer. Therefore, he should have had a vocational expert at step five to demonstrate what jobs the claimant could do considering his limitations and restrictions. He didn't do that. He just went to the guidelines, which he should not have used with this type of injury that he had, the seizures, the reconstructed right ankle, which he couldn't walk on and so forth. It would appear that the ALJ was determined not to find him not disabled. That would appear to be. All right. Thank you very much. Thank you for your arguments. The case of Claussen v. Estrue is submitted.
judges: B. Fletcher, McKeown, Whyte